IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRETA ROUBERT<br>            **Plaintiff,**<br>    v.<br>AMAZON, *et al*.<br>            **Defendants.** | CIVIL ACTION NO. 21-3091 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                                                                                                                                            February 27, 2024

      Plaintiff Greta Roubert filed suit alleging that she sustained injuries from tripping on a lag bolt[1] embedded in the concrete floor of a warehouse and distribution facility in Falls Township, Pennsylvania.[2] This facility is owned by Defendant AG-EIP 1 Geoffrey Drive, LLC ("AG-EIP") and leased and operated by Amazon. Due to recent construction work on the facility and complex contracting and subcontracting practices of AG-EIP and Amazon, multiple parties were joined as co-Defendants and third-, fourth-, and fifth-party Defendants.

      AG-EIP hired ALCS, Inc. to dismantle and remove all the racking systems within the warehouse that were left behind by the previous tenant.[3] Additionally, Amazon contracted with Gilbane Building Company ("Gilbane") to renovate the interior of the warehouse, and Gilbane further contracted "concrete grinding and sealing" work to Budget Maintenance.[4] Unlike the

---

[1] A lag bolt is a specialized fastener used to connect objects bearing significant structural loads.

[2] Initially, Ms. Roubert filed suit against Amazon, Gilbane, Equity Industrial Partners, and Kellermyers Bergenson Services LLC. Equity Industrial Partners and Kellermeyers are no longer parties in this litigation.

[3] Statement of Stipulated Material Facts by Budget, Ex. A [Doc. No. 167-1] ¶ 6.

[4] *Id*. ¶¶ 5, 7.

contract between AG-EIP and ALCS, Amazon's contract with Gilbane did not involve the removal of racking systems.[5]

On January 12, 2023, Gilbane filed a third-party complaint against Budget Maintenance, asserting claims of negligence, contractual indemnity, breach of contractual duty to insure, and common law indemnification and contribution.[6] Third-party Defendant, Budget Maintenance, moves for summary judgment, as to all causes of action asserted in Third-Party Plaintiff Gilbane's Complaint, and cross-claims asserted by Co-Defendants Amazon, AG-EIP 1 Geoffrey Drive, LLC, ALCS, Inc., and USA Rack Installation, LLC. Gilbane has responded to the Motion, to which Budget has replied. For the reasons provided below, the Motion will be granted.

I.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[10] Nonetheless, the non-moving party must support its opposition to the motion by

---

[5] *Id.* ¶ 9.

[6] Gilbane's Third-Party Compl. [Doc. No. 102].

[7] FED. R. CIV. P. 56(a).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9] *Id.*

[10] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

2

pointing to evidence in the record.[11] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[12]

## II. Discussion

To establish a negligence claim in Pennsylvania, Plaintiff must establish the following elements: (1) the defendant owed the Plaintiff a duty; (2) the defendant breached the duty; (3) the Plaintiff suffered actual harm; and (4) a causal relationship existed between the breach of duty and the harm.[13] In its Motion for Summary Judgment, Budget Maintenance argues it owed no duty to Plaintiff because it had no duty to remove remaining lag bolts in the facility. Gilbane contends that "a material factual dispute [exists] as to whether Budget was responsible for the bolt over which Plaintiff claims to have fallen."[14] However, as described in detail below, Gilbane has (1) failed to present evidence that the bolt was the type that Budget was obligated to pound into the floor as part of its flooring renovation subcontract, and (2) failed to present evidence that Budget had a duty to remove or inform someone of the lag bolt which caused Plaintiff's fall.

### A. Type of Lag Bolt

In pertinent part, the contract between Gilbane and Budget Maintenance states: "[Budget Maintenance] shall repair bolt holes by pounding bolts 1/2" below surface and fill with Hi-Tech TX3 epoxy filler. After cure grind smooth to surface as per manufacturer's instructions."[15] Budget Maintenance argues that the contract did not establish a duty for them to remove or pound the type of lag bolt that Plaintiff tripped over because it was too long for Budget

---

[11] *Anderson*, 477 U.S. at 249–50 (citations omitted).

[12] *Id.*

[13] *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 630–31 (Pa. Super. Ct. 2009).

[14] Gilbane's Resp. Opp'n [Doc. No. 160] at 5.

[15] Doc. No. 185-1 at 26.

Maintenance to remediate. Budget Maintenance claims they did not even possess the necessary equipment to remove the bolt at issue.[16] Gilbane responds that Budget Maintenance's position—that the lag bolt at issue was not the type of bolt required to be pounded into the floor under the subcontract—is supported only by a "self-serving affidavit of Budget's own employees."[17] The Court disagrees.

The affidavit of Frank Rigg, project foreman for Budget Maintenance, states that Budget Maintenance was not required to remove all lag bolts, but was instead required to use a "demo hammer or chipping gun or bush hammer tool" to pound already severed lag bolts into the concrete.[18] Budget Maintenance contends that the bolt in question was more than half an inch long and not already severed, therefore Budget Maintenance did not have the ability to remediate.[19] Although Gilbane protests that an affidavit from a Budget Maintenance employee is self-serving, Gilbane's own Construction Manager, Jonathan Witmer, stated that Budget Maintenance was only responsible for a bolt once it was flush with the floor, *i.e.*, a bolt which would not have led to Plaintiff's fall.[20] Because Budget Maintenance, the moving party, has asserted that there is no genuine dispute of material fact, Gilbane must counter with "specific facts showing there is a genuine issue for trial."[21] Assertions, allegations, and suspicions are insufficient to defeat summary judgment.[22] Gilbane's mere assertion that the bolt *may* have been

---

[16] Budget Maintenance's Mot. Summ. J. [Doc. No. 153] at 4.

[17] Gilbane's Resp. Opp'n [Doc. No. 160] at 6.

[18] Aff. of Frank Rigg, Ex. F [Doc. No. 167-6] ¶¶ 14-15.

[19] Budget Maintenance's Reply [Doc. No. 167] at 7.

[20] *See* Dep. of Jonathan Witmer, Ex. E [Doc. No. 167-5] at 47 ("The bolts that Budget Maintenance would have been responsible for is, after that bolt was flush with the surface, they would have hit it down below the surface of the concrete and then they would fill it").

[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[22] *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

4

the type that Budget was contractually obligated to pound below the floor is insufficient to defeat summary judgment.

### B. General Removal of the Lag Bolts

Next, Gilbane argues that "even if the bolt at issue was not the type that Budget was contractually required to pound . . . it was Gilbane's expectation that if, in the course of its work, Budget located a bolt that could not be pounded into the floor, Budget would remove the bolt or report the location of that bolt so that it could be removed."[23] Defendant bases this assertion on the deposition of Mr. Witmer, Gilbane's Construction Manager. Mr. Witmer testified that his team—including the Budget Maintenance subcontractor team—would have requested that a lag bolt be "removed in the areas where [they] had scope of work, where [they] were doing the grinding" if they were to encounter a lag bolt.[24] He further testified that a protruding lag bolt would have damaged the grinder used to grind the floors.[25]

However, there is no indication in the contract between Budget Maintenance and Gilbane that Budget was required to remove any lag bolts.[26] AG-EIP engaged ALCS to perform the work of dismantling and removing the racking systems from the warehouse, which included the removal of any lag bolts attached to the warehouse floor.[27] Furthermore, the fact that a lag bolt would damage Budget Maintenance's grinder does not, in and of itself, create a duty on the part of Budget to inspect all of the floors for lag bolts. Gilbane has failed to demonstrate a material

---

[23] Gilbane's Resp. Opp'n [Doc. No. 160] at 6–7.

[24] Dep. of Jonathan Witmer, Ex. E [Doc. No. 167-5] at 94.

[25] *Id.* at 98–99.

[26] *See* Doc. No. 185-1 at 26.

[27] Statement of Material Stipulated Facts by Budget, Ex. A [Doc. 167-1] ¶ 6. The deposition testimony of multiple other witnesses confirms that removing lag bolts was the responsibility of other contractors and subcontractors, as opposed to Budget Maintenance. *See* Dep. of Bruce Murray, Ex. B [Doc. No. 167-2] at 61, 63–64, 92–93; Dep. of Miguel Suarez, Ex. C [Doc. No. 167-3] at 8; Dep. of Hunter Emerson, Ex. G [Doc. No. 167-7] at 48, 92; Dep. of Gary McMillan, Ex. H [Doc. No. 167-8] at 50–52.

dispute as to whether Budget Maintenance had any duty to remove or inspect for lag bolts, nor has evidence been produced that Budget Maintenance found the lag bolt and failed to inform someone about it.

### C. Location

As a final consideration, Gilbane "denies that it had any responsibility or scope of work for bolt removal in the area where Plaintiff claims she fell."[28] This contention is corroborated by witness statements from both Budget Maintenance and Gilbane. Among the Budget Maintenance employees, Mr. Rigg's affidavit states that the "bolt was located inside a caged area controlled by Amazon where Budget Maintenance was not allowed to work."[29] From the Gilbane side, Mr. Witmer similarly testified that Gilbane did not have any scope of work in the area of the building where Plaintiff fell.[30] Likewise, Meredith Zuno, Gilbane's Senior Project Manager, testified that Budget Maintenance did not conduct any work in the section of the facility where Plaintiff fell.[31] Logic dictates that a subcontractor can only have as much responsibility over the scope of work as the underlying contractor.[32] Put simply, Gilbane cannot wipe its hands clean by disclaiming any contractual responsibility for the area at issue, while simultaneously pointing its finger at a subcontractor to which it delegated part of that same responsibility.

### III. CONCLUSION

For the aforementioned reasons, Budget Maintenance's Motion for Summary Judgment will be granted. An order will be entered.

---

[28] Gilbane's Resp. Opp'n [Doc. No. 160] at 6; *see also* Dep. of Jonathan Witmer, Ex. E [Doc. No. 167-5] at 49.

[29] Aff. of Frank Rigg, Ex. F [Doc. No. 167-6] ¶ 12.

[30] Dep. of Jonathan Witmer, Ex. E [Doc. No. 167-5] at 49 (stating that Gilbane did not have any scope of work in the area of the building where Plaintiff fell).

[31] Dep. of Meredith Zuno, Ex. D [Doc. No. 167-4] at 42, 71.

[32] *Duffy v. Fischbach & Moore, Inc.*, 126 A.2d 413, 416 (Pa. 1956) ("[T]he particular contractor or subcontractor . . . [is liable] for only such harm as is done by the particular work entrusted to him.").