**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRETA ROUBERT,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**AMAZON,** *et al*.<br><br>               **Defendants.** | **CIVIL ACTION NO. 21-3091** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                 **February 24, 2025**

Plaintiff Greta Roubert filed suit against Defendants Amazon, AG-EIP 1 Geoffrey Drive, LLC, and Gilbane Building Company to recover damages for injuries allegedly sustained in a slip and fall accident that occurred on October 2, 2020 on the premises located at 1 Geoffrey Drive, Falls Township, Pennsylvania.[1] AG-EIP filed a summons and Third-Party Complaint against ALCS, Inc.[2]

On May 16, 2024, Plaintiff filed a Motion in Limine to preclude the medical testimony of Defendants' expert Dr. John R. Donahue as inadmissible under Federal Rule of Evidence 703 and/or preclude Dr. Donahue from referencing or relying upon the expert report of Dr. Ira Sachs at the time of Dr. Donahue's testimony or deposition.[3] Defendants oppose the motion.

On September 27, 2024, Defendants Gilbane, AG-EIP, ALCS, and U.S.A. Rack Installation, LLC ("Moving Defendants") filed a Motion to Allow a Neurological Examination of Plaintiff.[4] Through this Motion, Moving Defendants request that the Court allow the Moving Defendants to schedule Plaintiff for an examination and compel Plaintiff to attend a medical

---

[1] Am. Compl. [Doc. No. 5] ¶ 6.
[2] Third Party Compl. [Doc. No. 38].
[3] Pl.'s Mot. Limine [Doc. No. 198].
[4] Defs.' Joint Mot. to Allow Neurologic Examination of Pl. [Doc. No. 205].

examination with Dr. Mark Ayzenberg.[5] Plaintiff opposes this motion, requesting that the Court

deny the Motion, or alternatively, if the Motion is granted, to require Moving Defendants to

reimburse Plaintiff and Counsel for any and all costs incurred by compelling Plaintiff to undergo

the second examination.[6]

      For the following reasons, the Court will deny Plaintiff's Motion in Limine and deny in

part and grant in part Moving Defendants' Motion to Allow a Neurological Examination of

Plaintiff.

## I.   BACKGROUND

      Plaintiff was working at a warehouse as an employee of an independent contractor where

she tripped and fell on a cut lag bolt left on the warehouse floor.[7] As a result of this trip and fall

accident, Plaintiff alleges injuries to her shoulder, knee, and back.[8] Plaintiff also alleges that as a

result of the incident, she required surgery to her right shoulder.[9] She further alleges that she is

likely permanently disabled as a result of these injuries.[10]

      On January 25, 2023, Plaintiff attended a medical examination performed by Dr. Sachs,

who was retained by Defendant Gilbane and other Defendants.[11] Following the medical

examination, Dr. Sachs issued a report to counsel for Gilbane, providing his findings and

opinions regarding the nature and extent of Plaintiff's injuries and current disabilities.[12] In his

report, Dr. Sachs concluded that Plaintiff's "right shoulder revealed no gross deformity, swelling,

synovitis or effusion, and no atrophy or wasting."[13] Dr. Sachs's report also stated that he found

---

[5] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205].
[6] Pl.'s Resp. Opp. Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 208] ¶ 24.
[7] Am. Compl. [Doc. No. 5] at ¶ 6.
[8] Am. Compl. [Doc. No. 5] ¶ 8.
[9] Am. Compl. [Doc. No. 5] ¶ 8.
[10] Am. Compl. [Doc. No. 5] ¶ 8.
[11] Sachs Report [Doc. No. 198-1] at 1.
[12] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205].
[13] Sachs Report [Doc No. 198-1] at 8.

"[no] objective evidence of any posttraumatic abnormality to the cervical, thoracolumbar spine, hips, right knee, or lower extremities."[14]

The day after Dr. Sachs examined Plaintiff, Plaintiff underwent an examination performed by Dr. Scott R. Fried, a physician retained by Plaintiff.[15] Following Dr. Fried's examination, Dr. Fried issued a report where he stated Plaintiff suffered from neurological symptoms such as brachial plexus nerve injury, adhesive capsulitis or "frozen shoulder" of her right shoulder, thoracic outlet involvement, and median neuropathy.[16] Dr. Fried's report described these neurological symptoms along with orthopedic conditions including a rotator cuff tear to the right shoulder, right knee chondral injury, low back injury, cervical plexopathy, and capsulitis of the right shoulder. These orthopedic and neurologic conditions set forth in Dr. Fried's report had not been previously diagnosed or mentioned in any medical records or reports of Plaintiff's treating doctors produced by Plaintiff's attorney or subpoenaed by the Defendants.[17]

Defendants requested that Dr. Sachs review Dr. Fried's report but were informed that Dr. Sachs was ill and no longer able to be retained as Defendants' expert. Moving Defendants then retained Dr. Donahue to serve as their new expert and perform a record review of the Plaintiff's medical records and history.[18] Dr. Donahue reviewed Plaintiff's records and issued a report,[19] which did not personally examine Plaintiff and instead relied on thirty-four of Plaintiff's past

---

[14] Sachs Report [Doc No. 198-1] at 9.
[15] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶ 8.
[16] Fried Report [Doc No. 206-1] at 5.
[17] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶ 11.
[18] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶ 18.
[19] *See* Donahue Report [Doc. No. 198-2].

medical records, including the report of Dr. Sachs and a report from Dr. Fried.[20] Dr. Sachs died on January 18, 2024.[21]

Plaintiff filed a Motion in Limine to preclude the testimony of Dr. Donahue and/or preclude reference or reliance upon the expert report of Dr. Sachs by Dr. Donahue at the time of his testimony.[22] Plaintiff argues that Dr. Donahue's expert medical testimony should be precluded because he did not personally examine Plaintiff and instead based his opinion on review of other medical records, including the report of Dr. Sachs.[23] Defendants oppose the motion.[24] Moving Defendants filed a Motion to Allow a Neurological Examination of Plaintiff with Dr. Ayzenberg, a Board-Certified Orthopedic Specialist, to perform an independent medical examination of Plaintiff.[25] Moving Defendants argue that the Court should order a second examination of Plaintiff because Plaintiff's physical state is in controversy and there is "good cause" for granting the motion, such as the death of Dr. Sachs.[26]

## II.   LEGAL STANDARD

Federal Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.[27]

---

[20] Donahue Report [Doc. No. 198-2] at 1-3.
[21] Pl.'s Mot. Limine [Doc. No. 198] ¶ 7.
[22] *See* Pl.'s Mot. Limine [Doc. No. 198].
[23] Pl.'s Mot. Limine [Doc. No. 198] ¶¶ 14–16.
[24] *See* Doc. Nos. 201, 202, 203, 204.
[25] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205].
[26] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶¶ 12–16.
[27] Fed. R. Evid. 703.

Rule 703 indicates that when assessing reasonable reliance, courts will look to what experts in the relevant discipline deem to be reliable facts or data.[28] When assessing reasonable reliance, the court can take into account relevant factors, including "the particular expert's opinion that experts reasonably rely on that type of data, as well as the opinions of other experts as to its reliability."[29] Federal Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[30]

Under Rule 35 of the Federal Rules of Civil Procedure, a court is permitted to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."[31] The order "may be made only on motion for good cause and on notice to all parties and the person to be examined."[32] The order must also "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."[33] The decision whether to grant a motion to compel a medical examination is within the discretion of the district court.[34]

## III.   DISCUSSION

### A.  Plaintiff's Motion in Limine to Preclude Testimony of Dr. Donahue

Plaintiff moves to preclude Dr. Donahue's expert medical testimony because he did not personally examine Plaintiff and instead based his opinion on review of other medical records,

---

[28] *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 747 (3d Cir. 1994).
[29] *Id.* at 748.
[30] Fed. R. Evid. 403.
[31] Fed. R. Civ. P. 35(a)(1).
[32] Fed. R. Civ. P. 35(a)(2)(A).
[33] Fed. R. Civ. P. 35(a)(2)(B).
[34] *Shirsat v. Mut. Pharm. Co., Inc.*, 169 F.R.D. 68, 70 (E.D. Pa. 1996).

including the report of Dr. Sachs.[35] Plaintiff argues that allowing Dr. Donahue to base his

testimony on  Dr. Sachs's report would be prejudicial for three reasons: because Dr. Donahue's

report was not based on any personal observations made in examining Plaintiff, Dr. Sachs's

report was prepared in anticipation of litigation, and Plaintiff would not have the opportunity to

cross-examine Dr. Sachs.[36] Moving Defendants assert that if the Court were to grant Plaintiff's

Motion in Limine, Moving Defendants would be without an expert.[37]

Under Rule 703, experts may rely on data from "(1) firsthand observation, (2) admitted

evidence, and (3) facts outside of the record and not personally observed, but of the kind that

experts in their field reasonably rely upon in forming opinions."[38] Thus, experts may not simply

"parrot" ideas of other experts, but they "are permitted to rely on materials used by other experts

in developing their own opinions."[39] Experts are permitted to rely on "a mix of objective data

and subjective analysis from another expert" as a basis of their testimony.[40] Rule 703 allows

experts to rely on hearsay so long as it is of the kind that is normally relied on by experts in their

field.[41]

It is common, when making diagnoses, for a physician to rely "on information from

numerous sources and of considerable variety, including statements by . . . other doctors."[42]

"[E]valuation of [a] patient's medical records, like performance of a physical examination, is a

reliable method of concluding that a patient is ill even in the absence of a physical

---

[35] Pl.'s Mot. Limine [Doc. No. 198] ¶¶ 14-16.
[36] Pl.'s Mot. Limine [Doc. No. 198] ¶¶ 16-18.
[37] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶¶ 20-21.
[38] *McLeod v. Dollar General*, No. 13-3113, 2014 WL 4634962, at *5 (E.D. Pa. Sept. 16, 2014).
[39] *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (quoting *I.B.E.W. Local Union 380 Pension Fund v. Buck Consultamts*, No. 03-4932, 2008 WL 2265269, at *3 (E.D. Pa. June 3, 2008)).
[40] *In re Wagner*, No. 06-1026, 2007 WL 966010, at *4 (E.D. Pa. Mar. 29, 2007).
[41] *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999), *amended on other grounds*, 199 F.3d 158 (3d Cir. 2000).
[42] Fed. R. Evid. 703, advisory committee's notes on proposed rules.

examination."[43] Courts will admit testimony based in part on "an *attending nurse* or *physician* having personal observation" of a party.[44] Further, the validation of other physicians' reports by the testifying expert, subject to cross-examination, satisfies Rule 703's requirements and permits these reports to serve as a basis for a doctor's expert opinion.[45]

Dr. Donahue's reliance on Dr. Sachs's report was appropriate. Dr. Donahue relied on 34 medical records, including Dr. Sachs's report, Plaintiff's expert's report, and his own medical expertise and judgment, to form his opinions and conclusions regarding the extent of Plaintiff's injuries.[46] As Moving Defendant's note, it is common and standard practice for physicians to review a patient's medical records when rendering their own diagnoses, evidenced by the fact that "[e]ven Plaintiff's own medical experts relied upon prior records, data, reports and imaging studies."[47] Accordingly, it was proper for Dr. Donahue to rely on Dr. Sachs's report following Dr. Sach's personal observation of Plaintiff since evaluation of medical records is a reliable method to form the basis of expert testimony regarding a party's medical condition. Therefore, Dr. Donahue's review of other physicians' reports is appropriate under Rule 703 and permits these reports to serve as the basis for his expert testimony.

Further, Dr. Donahue did not merely parrot the work and opinion of Dr. Sachs but instead analyzed several medical reports to form his own opinions. For example, in his report, Dr. Donahue stated that "Dr. Sachs noted multiple injuries and claims of multiple areas of persistent pain secondary to her claimed injuries of 10/02/20."[48] Using Dr. Sachs's report, Dr. Donahue

---

[43] *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 at 762. "[A] doctor only needs one reliable source of information showing that the plaintiff is ill and either a physical examination or medical records will suffice." *Id.*
[44] *Id.* (emphasis in original).
[45] *McLeod v. Dollar General*, No. 13-3113, 2014 WL 4634962, at *5 (E.D. Pa. Sept. 16, 2014) (quoting *In re Wagner*, No. 06-01026, 2007 WL 966010, at *4 (E.D. Pa. Mar. 29, 2007)).
[46] Pl.'s Mot. Limine [Doc. No. 198] ¶ 8.
[47] ACLS's Resp. Opp. Pl.'s Mot. Limine [Doc. No. 202] at 11; *see also* Fried Report Doc. No. 206-1] at 7-9 ("[Dr. Fried] had the opportunity to review extensive medical records of [Plaintiff's] injuries and treatments.").
[48] Donahue Expert Report [Doc. No. 198-2] at 5.

opined that "[o]ne would expect that with a routine subacromial decompression and rotator cuff repair by this time of [the] exam on 01/25/23, she would be completely healed."[49] Dr. Donahue additionally opined that "[o]ne would also expect that if she had a right knee contusion that she would be completely healed."[50] Since Dr. Donahue formed his own opinions and conclusions regarding the Plaintiff's injuries, he did not merely parrot Dr. Sachs's work. Thus, Dr. Donahue's opinion meets the requirements of Rule 703.

Plaintiff also argues that if Dr. Donahue were to testify, Plaintiff would be prejudiced because Dr. Sachs's report was made in anticipation of litigation and Plaintiff does not have the opportunity to cross-examine Dr. Sachs.[51] Plaintiff's assertion that the Sachs report is improper because it was made in anticipation of litigation is misguided as "[t]here is nothing improper about a medical report prepared solely for litigation,"[52] and Dr. Sachs personally examined Plaintiff.[53]

Moreover, since Dr. Donahue is permitted to rely on statements made by other physicians, his testimony rests on "good grounds." Any potential prejudice to having Dr. Donahue testify based in part on Dr. Sachs's report can be mitigated by cross-examining Dr. Donahue on the basis of his opinion, presenting contrary expert testimony, or careful instructions on the burden of proof.[54] Rule 703 does not require that a party be able to cross-examine every author of a record in which an expert relies upon. Thus, Rule 703 and Rule 403 do not support

---

[49] Donahue Expert Report [Doc. No. 198-2] at 5-6.
[50] Donahue Expert Report [Doc. No. 198-2] at 6.
[51] Pl.'s Mot. Limine [Doc. No. 198] ¶¶ 15-17.
[52] *In re TMI Litig.*, 193 F.3d at 698.
[53] When a physician evaluates a patient in preparation for litigation, the physician should either examine the patient or review the patient's medical records to come to a conclusion regarding the patient's injuries. *In re TMI Litig.*, 193 F.3d at 698 (citing *In re Paoli*, 35 F.3d at 762).
[54] *In re TMI Litig.*, 193 F.3d at 692.

exclusion of Dr. Donahue's testimony. Accordingly, the Court will deny Plaintiff's Motion in Limine.

## B. Moving Defendants' Joint Motion for a Neurologic Examination of Plaintiff

Moving Defendants argue that the Court should order a second examination of Plaintiff because Plaintiff's physical state is in controversy and there is "good cause" for granting the motion, because of the death of Dr. Sachs.[55]

Rule 35 does not limit the number of examinations a court can order, and even when an examination has already occurred, a subsequent examination can nonetheless be ordered if a court finds it necessary.[56] When determining whether to allow a second examination, a court will look to the circumstances underlying the request,[57] which include a strong showing of necessity and change in the situation.[58]

A plaintiff who asserts mental or physical injury "places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury."[59] Furthermore, "[a] plaintiff can put her condition in controversy by claiming damages related to it."[60] An examination is proper under Rule 35 when without an examination, a defendant's defense would be limited to the mere cross-examining of evaluations offered by the plaintiff's experts and there was no other means available to the defendant to obtain the information.[61] When a movant has already had the

---

[55] Defs.' Mot. to Allow Neurologic Examination of Pl. [Doc. No. 205] ¶¶ 12-15.
[56] *Shirsat*, 169 F.R.D. at 72.
[57] *Shirsat*, 169 F.R.D. at 72.
[58] *Pettyjohn v. Goodyear Tire & Rubber Co.*, No. 91-2681, 1992 WL 176494, at *1-2 (E.D. Pa. Jul. 16, 1992).
[59] *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964).
[60] *Hansen v. Speedway*, No. 19-3174, 2021 WL 254555, at *2 (E.D. Pa. Jan. 26, 2021).
[61] *Id.*

opportunity to examine the party, however, good cause will be found only if there is a change in the party's circumstances or condition.[62]

"When Rule 35 motions are made after the time period for discovery has ended, they implicate Rule 16, which instructs that '[a] schedule may be modified only for good cause and with the judge's consent.'"[63] A court "may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."[64] If good cause to modify the discovery schedule under Rule 16 does not exist, courts will consider the following *Pennypack* factors to determine whether to exclude critical expert testimony:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered;
> (2) "the ability of that party to cure the prejudice";
> (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court";
> (4) any "bad faith or willfulness in failing to comply with the court's [scheduling] order"; and
> (5) the importance of the excluded evidence.[65]

Of the five *Pennypack* factors, "the importance of the evidence is often the most significant factor."[66]

First, Plaintiff's injuries are undoubtedly in controversy in this litigation. A second examination could potentially adduce specific facts to support or refute the opinion of Plaintiff's expert regarding Plaintiff's alleged neurological issues. These facts are necessary to the Defendants' case because Plaintiff's neurologic conditions set forth in Dr. Fried's report had not been diagnosed or mentioned in any medical records or reports of Plaintiff's treating doctors

---

[62] *Latella v. Consolidated Rail Corp.*, No. 92-6908, 1993 WL 235915, at *1 (E.D. Pa. June 29, 1993).
[63] *Hansen*, 2021 WL 254555, at *2 (quoting Fed. R. Civ. P. 16(b)(4)).
[64] Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.
[65] *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)).
[66] *ZF Meritor, LLC*, 696 F.3d at 298.

produced by Plaintiff's attorney or subpoenaed by the Defendants.[67] Thus, Defendants would be limited to cross-examining Plaintiff's expert on Plaintiff's neurological condition and physical symptoms from the neurological condition—an issue central to the instant case—that was raised by Plaintiff for the first time following an examination by her own expert. As such, good cause exists. Moreover, Defendants would not be able to obtain an independent assessment of Plaintiff's neurological state without the Court ordering an examination, as Plaintiff's neurological state was newly presented as an injury following Defendants' original expert examining Plaintiff.[68] Thus, these changes in circumstances and changes regarding Plaintiff's condition support a second examination under Rule 35. Therefore, Defendants have established the two elements required for a medical examination ordered under Rule 35: (1) that the Plaintiff's physical and/or mental state is in controversy; and (2) that there is good cause for the Court to order the examination.

Second, even if good cause to modify the discovery schedule under Rule 16 did not exist, any prejudice to Plaintiff is mitigated because Plaintiff's expert has already conducted a neurological examination of Plaintiff and can present a conflicting expert opinion if the results of Defendants' neurological examination produce differing results. Moreover, if prejudice were to arise, it would be mitigated by Plaintiff's ability to produce her own expert testimony on the matter and cross-examine the Defendants' expert report following the neurological examination. Third, there is no evidence that requiring Plaintiff to undergo another examination would disrupt the case schedule. Fourth, the Court declines to find bad faith on behalf of Defendant's failure to comply with the original discovery schedule. Bad faith requires a showing of "willful deception

---

[67] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶ 11.
[68] Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 205] ¶¶ 8-10.

or 'flagrant disregard.'"[69] Plaintiff neither alleges bad faith, nor does the record support it. There is no evidence that Defendants attempted to deceive the Court or act in bad faith as to secure a tactical advantage.

Finally, Moving Defendants would be severely prejudiced if not given the opportunity to rebut Dr. Fried's opinions regarding Plaintiff's neurological injuries.[70] Expert testimony regarding the absence or presence of Plaintiff's neurological injuries "could drastically influence a fact finder's analysis of both the existence and quantum of [Plaintiff's] damages."[71] To rule otherwise would lead to the exclusion of important evidence—the most significant factor in the *Pennypack* five-factor analysis.[72] Thus, *Pennypack* supports the Court ordering a second examination of Plaintiff under FRCP 35.

The movant may choose the physician to perform the examination, but "the movant does not have an absolute right to have the examination performed by a particular physician."[73] Unless the nonmovant has a valid objection to the movant's selected physician, the selected physician should perform the examination.[74] Defendants' elected physician is located in Rockledge, Pennsylvania, whereas Plaintiff lives in Orlando, Florida. Plaintiff objects to the Defendants' selected physician to perform the examination in part because Plaintiff would have to fly thousands of miles to another state to undergo the examination.[75] To enforce Defendants' elected physician would be burdensome on Plaintiff. To reduce this burden, the Court will require the parties submit to the Court the name of an agreed-upon physician who can complete

---

[69] *Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.*, No. 19-0514, 2021 WL 1907475, at *6 (E.D. Pa. May 12, 2021).
[70] *Hansen*, 2021 WL 254555, at *5.
[71] *Id.*
[72] *ZF Meritor*, 696 F.3d at 298.
[73] *Christian v. United States*, No. 98-2045, 1999 WL 1018252, at *4 (E.D. Pa. Nov. 10, 1999).
[74] *Id.*
[75] Pl.'s Resp. Opp. Defs.' Mot. Allow Neurologic Examination Pl. [Doc. No. 208] ¶ 23.

the neurological examination. The doctor must be within 2 hours from Plaintiff's residence and accessible for Plaintiff to attend an examination.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion in Limine is denied and the Joint Motion of Defendants and Third-Party Defendants to Allow a Neurological Examination of Plaintiff is granted in part, to allow a second examination, and denied in part, as to the Defendants' selected physician. An order will be entered.