**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRETA ROUBERT,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 21-3091** |
| **v.** | |
| **AMAZON**, *et al*., | |
| **Defendants.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                    **November 3, 2025**

Plaintiff Greta Roubert filed suit against Defendants Amazon, AG-EIP 1 Geoffrey Drive, LLC ("AG-EIP"), Gilbane Building Company, and Kellermeyer Bergensons Services, LLC, to recover damages for injuries allegedly sustained in a trip and fall accident that occurred on October 2, 2020, while Plaintiff was an invitee on the premises located at 1 Geoffrey Drive, Falls Township, Bucks County, Pennsylvania.[1] On December 7, 2021, AG-EIP filed a summons and Third-Party Complaint against ACLS, Inc. ("ALCS")—a property removal and remediation corporation that AG-EIP had hired—alleging various causes of action, including for Contractual Indemnity, Breach of Contractual Duty to Insure, and Common Law Indemnification and Contribution.[2]

Defendant and Third-Party Plaintiff AG-EIP has moved to reform its Service Contract with ALCS to change the commencement date from January 5, 2021, to September 5, 2020. AG-EIP has also moved for summary judgment on all claims asserted in Plaintiff Roubert's Complaint and on all Crossclaims asserted by Co-Defendants and Third-Party Defendants.[3]

---

[1] AG-EIP's Mot. Reform Service Contract ¶ 1 [Doc. No. 148]; Roubert Compl. [Doc. No. 1-1].

[2] AG-EIP's Mot. Reform Service Contract ¶¶ 2–3 [Doc. No. 148]; AG-EIP Compl. [Doc. No. 38].

[3] AG-EIP's Mot. Sum. J. [Doc. No. 146].

Third-Party Defendant ALCS opposes the Motion to Reform, and has moved for partial summary judgment, seeking the dismissal of AG-EIP's claims of Contractual Indemnity, Breach of Contractual Duty to Insure, and Common Law Indemnification and Contribution.[4] For the following reasons, the Court will deny AG-EIP's Motion for Summary Judgment and Motion to Reform the Service Contract, and grant in part and deny in part ALCS's Motion for Partial Summary Judgment.

I.    BACKGROUND

Plaintiff Greta Roubert filed suit on June 1, 2021, in the Court of Common Pleas, Philadelphia County, alleging that she sustained injuries from tripping on a lag bolt[5] embedded in the concrete floor of a warehouse and distribution facility in Falls Township, Pennsylvania.[6] The facility is owned by AG-EIP and leased and operated by Amazon.[7] Due to recent construction work on the warehouse and the complex contracting and subcontracting practices of AG-EIP and Amazon, eight parties were joined as co-Defendants and third-, fourth-, and fifth-party Defendants.[8]

---

[4] ALCS Mot. Partial Sum. J. [Doc. No. 150]. ALCS is also a Third-Party Plaintiff, as it brought separate claims against a subcontractor. That dispute is not an issue in the pending motions.

[5] A lag bolt is a specialized fastener used to connect objects bearing significant structural loads.

[6] The case was removed to this Court on July 12, 2021, on the basis of diversity. Initially, Roubert filed suit against Amazon, Gilbane, Equity Industrial Partners, and Kellermyers Bergenson Services LLC. The name of Defendant Equity Industrial Partners was amended to "AG-EIP 1 Geoffrey Drive, LLC." *See* Order [Doc. No. 39]. Kellermyers is no longer a party in this litigation.

[7] Stipulated Material Facts ¶¶ 1–2 [Doc. Nos. 146-1, 150-1].

[8] The Defendants include Amazon, AG-EIP, Gilbane construction company (hired by Amazon as a construction manager to prepare the warehouse), ALCS (hired by AG-EIP to perform all work involving the dismantling and removal of material handling equipment and the racking systems within the warehouse that were left behind by the previous tenant); USA Rack Installation LLC (hired by ALCS to aid with dismantling and removing rack systems), Budget Maintenance Concrete Services, Inc. (hired by Gilbane to grind and polish the concrete floors in certain areas of the warehouse), MG Brothers, LLC (subcontractor hired by USA Rack Installation to complete dismantling and removal), and ETZ Rack Installer LLC (subcontractor hired by USA Rack Installation to complete dismantling and removal).

On August 25, 2020, AG-EIP hired ALCS to perform all work involving the dismantling and removal of material handling equipment and the racking systems within the warehouse that were left behind by the previous tenant.[9] The parties did not execute a written contract before ALCS began working at the warehouse.[10]

On September 24, 2020, AG-EIP and Amazon signed a Lease Agreement for Amazon's occupancy of the facility.[11] The Lease Agreement included an Addendum titled "Notice of Lease Term Dates," that was signed on November 21, 2020.[12] The warehouse was divided into Phase 1 and Phase 2 to facilitate necessary renovations.[13] Greta Roubert was an employee of Green Earth Building Maintenance, which was a contractor hired by Amazon.[14] Plaintiff Roubert was working as an inventory receiver inside the warehouse.[15] On October 2, 2020, she tripped and fell in the warehouse.[16]

A senior general superintendent of the Gilbane Building Company, which Amazon hired as a construction manager to prepare the warehouse, was informed about Plaintiff Roubert's trip and fall accident at the warehouse in October.[17] The superintendent was later shown the area in the warehouse facility where the accident allegedly occurred and observed the lag bolt in the warehouse floor in that area.[18] Gary McMillan of AG-EIP was notified in October 2020 that

---

[9] Stipulated Material Facts ¶ 7, ALCS's Ex. A [Doc. No. 150].

[10] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[11] Stipulated Material Facts ¶ 2, ALCS's Ex. A [Doc. No. 150].

[12] Stipulated Material Facts ¶ 3, ALCS's Ex. A [Doc. No. 150].

[13] Stipulated Material Facts ¶ 4, ALCS's Ex. A [Doc. No. 150].

[14] AG-EIP Mot. Summ. J. at 2 [Doc. No. 146].

[15] Stipulated Material Facts ¶ 8, ALCS's Ex. A [Doc. No. 150]. Green Earth Building Maintenance is a contractor hired by Amazon to work in the warehouse.

[16] Stipulated Material Facts ¶¶ 8–9, ALCS's Ex. A [Doc. No. 150].

[17] Stipulated Material Facts ¶ 9, ALCS's Ex. A [Doc. No. 150].

[18] Stipulated Material Facts ¶ 10, ALCS's Ex. A [Doc. No. 150].

someone fell at the warehouse facility at 1 Geoffrey Drive.[19] Bruce Alan Murray, Jr., President and sole employee of ALCS, was not notified of Plaintiff's fall prior to January 5, 2021.[20]

Although ALCS's work was completed in the fall of 2020, ALCS and AG-EIP did not execute a Service Contract for said work until months later, on January 5, 2021, at which time AG-EIP was aware of Plaintiff Roubert's trip and fall.[21] Section 1 of the Service Contract states: "This is a contract for the performance of services as a single event. Service is anticipated to take 30 days to complete and shall commence on 1/5/21."[22] Barbara Goodwin, an Accounts Payable Coordinator with New England Facilities Solutions—a facilities and construction management provider for Equity Industrial Partners and its subsidiaries, partners and agents, including AG-EIP—prepared the contract for AG-EIP.[23] Allegedly, Goodwin mistakenly inserted the commencement date of January 5, 2021, in the Service Contract instead of September 5, 2020.[24]

The Service Contract entered into between the parties provides indemnification obligations in Section 14 and insurance obligations in Section 21.[25] The Service Contract also includes a section discussing work performed prior to execution of the contract.

Section 10 of the Service Contract, titled Services Prior to Execution, states:

Notwithstanding the fact that this Contract is executed as of the date first set forth above, the parties acknowledge that to the extent any portion of the Work was performed prior to such a date, all of such Work shall be governed by the terms and conditions of this Contract and shall be deemed to be part of the Work. Contractor

---

[19] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[20] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[21] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[22] Service Contract § 1, ALCS's Ex. B [Doc. No. 150].

[23] Aff. of Barbara Goodwin ¶¶ 1-7, AG-EIP's Ex. D [Doc. No. 148-4].

[24] Aff. of Barbara Goodwin ¶¶ 11-12, AG-EIP's Ex. D [Doc. No. 148-4].

[25] Service Contract §§ 14, 21, ALCS's Ex. B [Doc. No. 150].

shall not be entitled to compensation for such prior activities and services except as expressly provided herein.[26]

## II.    AG-EIP's Motion to Reform Service Contract

Reformation of a contract is an "equitable remed[y] that [is] sparingly granted."[27] Reformation of a written instrument may be granted if the instrument is "at variance with the terms of the parties' original agreement" in order to reflect the true understanding of the parties.[28]

AG-EIP, through its motion to Reform the Service Contract, seeks to reform the commencement date of the Service Contract to apply retroactively to services that occurred prior to the signing of the contract. Specifically, AG-EIP seeks to "[r]eform the commencement date set forth in the Service Contract . . . to September 5, 2020."[29] AG-EIP asserts that ALCS knew that the commencement date set forth in the Service Contract was incorrect and that the correct service date was September 5, 2020.[30] ALCS argues that AG-EIP created and chose when the contract would be signed, that AG-EIP is now seeking to change a document it created in order to secure defense and indemnification "for a fall that only [AG-EIP] knew about at the time the contract was signed," and that AG-EIP is trying to relieve itself of responsibility.[31]

Under Pennsylvania law, courts may reform transactions and instruments, including contracts, where there have been mutual or unilateral mistakes.[32] A mutual mistake exists when

---

[26] Service Contract § 10, ALCS's Ex. B [Doc. No. 150].

[27] *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235, 1239 (3d Cir. 1980)).

[28] 1 Corbin on Pennsylvania Contracts § 28.11 (2020).

[29] AG-EIP's Mot. Reform Service Contract ¶ 20 [Doc. No. 148].

[30] AG-EIP's Mot. Reform Service Contract ¶ 19 [Doc. No. 148].

[31] ALCS's Opp. Mot. Reform Service Contract at 2-4 [Doc. No. 149]. Pennsylvania law applies to this action because the warehouse is located in Pennsylvania and the claims against AG-EIP and ALCS are brought under Pennsylvania law.

[32] *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005).

there is a mistake that causes each party to misunderstand the other's intent or when a mistake is

shared and relied on by both parties.[33] If the mistake alleged is unilateral, "party seeking

reformation on the basis of [a] unilateral mistake may be granted relief if the party against whom

reformation is sought has such knowledge of the mistake as to justify an inference of fraud of

bad faith."[34] Without proof of an inference of fraud or bad faith, reformation must fail.[35]

Furthermore, to afford relief for a unilateral mistake, "it generally must be the opposing party's

fault," and parties may be permitted to reform the contract only to make the written contract

reflect the understanding of the parties.[36]

 AG-EIP is attempting to reform the Service Contract due to its own unilateral mistake.

AG-EIP is the drafter of the contract. As Goodwin—who prepared the contract on behalf of AG-

EIP—attested, she "mistakenly inserted" that the services to be "performed under the Service

Contract shall commence on 1/5/21," when the services at issue in the Service Contract had

already been performed.[37] Therefore, in order to prevail on its Motion to Reform, AG-EIP must

show that ALCS had such knowledge of the mistake to justify an inference of fraud or bad

faith.[38]

 AG-EIP fails to assert any evidence, let alone clear and convincing evidence, of an

inference of fraud or bad faith on behalf of ALCS in its Motion to Reform the Service Contract.

The Motion to Reform merely states that ALCS "knew that the commencement date set forth in

---

[33] *Id.*

[34] *Muthler*, 889 A.2d at 467 (quoting *Dudash v. Dudash*, 460 A.2d 323, 327 (Pa. Super. 1983)).

[35] *Id*.

[36] *Hymms v. Commonwealth*, 281 A.3d 375, 379 (Pa. Commw. Ct. 2022); *Murray v. Willistown Twp.*, 169 A.3d 84, 94 (Pa. Super. 2017).

[37] Aff. of Barbara Goodwin ¶¶ 11–12, AG-EIP's Ex. D [Doc. No. 148-4].

[38] *Muthler*, 889 A.2d at 467-8.

the Service Contract was incorrect," which does not provide evidence that ALCS possessed fraudulent intent or bad faith during formation of the Service Contract, especially considering that AG-EIP drafted the contract and that ALCS was unaware of Roubert's fall prior to signing the contract.[39]

Mr. Murray, the sole employee of ALCS, attested to the events relating to the contract's signing.[40] Mr. Murray was in the hospital from January 1 through January 15, 2021, before going into a coma for 60 days due to complications from COVID-19.[41] Mr. Murray testified that, due to his severe illness, he neither remembered when the contract was signed nor inquired as to why AG-EIP wanted a contract for this work that was already completed months prior.[42] Mr. Murray's testimony indicates that it was highly unusual for AG-EIP to request he sign a contract. Indeed, of the thirty to forty jobs he had previously completed for AG-EIP, he had never entered into a contract before and simply kept an updated Certificate of Insurance on file with AG-EIP.[43] AG-EIP's response does not aver additional facts that indicate any fraud or bad faith on ALCS's part.

Because of AG-EIP's inability to support an inference of bad faith on behalf of ALCS along with the fact that the alleged unilateral mistake stemmed from AG-EIP's own conduct, the Motion for Reformation will be denied.

---

[39] AG-EIP's Mot. Reform Service Contract ¶ 19 [Doc. No. 148].

[40] Murray Dep. at 73, ALCS's Mot. Partial Summ. J. Ex. C [Doc. No. 150].

[41] ALCS Opp. Reform Service Contract ¶ 13 [Doc. No. 149]; ALCS's Mot. Partial Summ. J. at 3 [Doc. No. 150]; *see also* Murray Dep. at 73-74, ALCS's Ex. C [Doc. No. 150].

[42] Murray Dep. at 73-74, ALCS's Mot. Partial Summ. J. Ex. C [Doc. No. 150].

[43] Murray Dep. at 34, 73, ALCS's Mot. Partial Summ. J. Ex. C [Doc. No. 150].

### III.    MOTIONS FOR SUMMARY JUDGMENT

#### A.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[45] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[46] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[47] Nonetheless, the non-moving party must support its opposition to the motion with evidence in the record.[48] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[49]

The rule is no different when there are cross-motions for summary judgment.[50] As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing

---

[44] Fed. R. Civ. P. 56(a).

[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[46] *Id.*

[47] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted).

[48] *Id.*

[49] *Anderson*, 477 U.S. at 249–250 (citations omitted).

[50] *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

party waives judicial consideration and determination whether genuine issues of material fact exist."[51]

### B.    ALCS's Motion for Partial Summary Judgment

ALCS seeks summary judgment on AG-EIP's claims of Contractual Indemnity, Breach of Contractual Duty to Insure, and Common Law Indemnification and Contribution arising out of the parties' Service Contract effective on January 5, 2021, signed approximately three months after Plaintiff Roubert's alleged accident that occurred on October 2, 2020.[52]

#### 1.    Contractual Indemnity

An indemnity clause holds the indemnitee harmless from liability by requiring the indemnitor to bear the cost of any damages for which the indemnitee is held liable.[53] "In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances."[54] Under Pennsylvania law, a court considering the construction and enforceability of an indemnification provision "must strictly construe the scope of [the contract] against the party seeking indemnification."[55] However, on a summary judgment motion, the material facts will be construed in light most favorable to the nonmovant.

To be enforceable, the provision must: (1) not contravene public policy; (2) relate only to the contracting parties while excluding matters of public interest; (3) result from the equal bargaining power of both parties; and (4) clearly state that the beneficiary is relieved of liability

---

[51] *Id.* (citation omitted).

[52] ALCS' Mot. Partial Summ. J. [Doc. No. 150].

[53] *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 202 (3d. Cir. 1995).

[54] *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 472 (Pa. Super. 2003) (quoting *County of Del. v. J.P. Mascaro & Sons*, 830 A.2d 587, 591).

[55] *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir. 2001).

only for the beneficiary's own negligence.[56] Any ambiguity in the contract must be strictly construed against the party seeking indemnification.[57]

Even viewed in the light most favorable to AG-EIP, the Service Contract, including the indemnification clause and retroactivity clause, resulted from unequal bargaining power between the parties and is unenforceable. The undisputed facts present an issue of unequal bargaining power of the parties during formation of the Service Contract. AG-EIP and ALCS did not execute a written contract before ALCS began working at the warehouse in September 2020, nor did AG-EIP request that ALCS sign a written contract before ALCS began working.[58] Gary McMillan of AG-EIP was notified in October 2020 that someone fell at the warehouse.[59] Three months after AG-EIP learned of Plaintiff Roubert's alleged fall, AG-EIP presented ALCS with the Service Contract that included "defense and indemnification for a fall that only AG-EIP knew about."[60] ALCS was unaware of Plaintiff Roubert's alleged fall when the Service Contract was signed.[61] The Service Contract, and the indemnification clause therein, is not a "contract[] between informed business entities,"[62] because only AG-EIP was aware of Plaintiff Roubert's prior injury, for which the Service Clause would retroactively require ALCS to indemnify it.

A contract or clause is unconscionable when there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to

---

[56] *Valhal Corp.*, 44 F.3d at 202.

[57] *Id.* (citing *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993)).

[58] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[59] ALCS's Mot. Partial Summ. J. at 2 [Doc. No. 150].

[60] ALCS's Mot. Partial Summ. J. at 3 [Doc. No. 150].

[61] ALCS's Mot. Partial Summ. J. at 3 [Doc. No. 150].

[62] *Valhal Corp.*, 44 F.3d at 204.

the other party."[63] Here, both factors are clear. Mr. Murray signed the contract on behalf of ALCS while he was hospitalized and retained no memory of signing the contract. ALCS had never before been asked to sign a written contract with AG-EIP, but Mr. Murray was unable to question the change in practice given his severe illness. Further, the terms of the agreement are unreasonably favorable to AG-EIP. The Service Contract would fully indemnify AG-EIP for a trip and fall that had already occurred and of which ALCS was not informed. Plaintiff Roubert's alleged injuries would certainly be relevant to ALCS's consideration of whether to incorporate the indemnification clause into the Service Contract. This contract post-dates completion of the work; occurred while Mr. Murray was hospitalized on the verge of a coma, while AG-EIP was aware of a trip and fall and ALCS was not; and purports to fully relieve AG-EIP of responsibility for the accident that already occurred.

Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it."[64] Here, executing the Service Contract would aid AG-EIP to avoid paying damages arising from Plaintiff Roubert's lawsuit. Retroactively applying the Service Contract would be unconscionable because AG-EIP concealed the fact that Plaintiff Roubert had been injured on the warehouse premises and because the Service Contract was executed at the time when Bruce Alan Murray, Jr., the sole employee of ALCS, was hospitalized for a coma-inducing medical condition and did not remember signing the contract.[65]

---

[63] *Todd Heller, Inc. v. United Parcel Service, Inc.*, 754 A.2d 689, 700-701 (Pa. Super. Ct. 2000) (citations omitted).

[64] *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007).

[65] ALCS's Mot. Partial Summ. J. at 3 [Doc. No. 150].

Even in the light most favorable to AG-EIP, there is no genuine issue of material fact such that a reasonable factfinder could find in favor of AG-EIP because AG-EIP knew of the accident, did not disclose the accident to ALCS prior to executing the contract, and drafted the contract to include a retroactivity clause that would relieve it of liability. AG-EIP failed to adduce sufficient evidence to support its contractual indemnity claim, and the Court will grant summary judgment in favor of ALCS on this issue.

### 2.    Breach of Contractual Duty to Insure

AG-EIP's claim of breach of contractual duty to insure is premised on Section 21 of the Service Contract which required ALCS and any of its subcontractors to obtain and keep in full force and effect certain insurance, including commercial general liability insurance meant to cover personal and bodily injury.[66] Based on Section 21 of the Service Contract, AG-EIP argues that ALCS is contractually obligated to procure and provide liability insurance coverage that includes coverage to AG-EIP as an additional insured under any commercial general liability policies that afford coverage to ALCS as a named insured for the Causes of Action asserted against ALCS in Plaintiff Roubert's First Amended Complaint.[67]

AG-EIP does not allege in its Amended Complaint that any oral contract predating the Service Contract required ALCS to maintain commercial general liability insurance covering personal or bodily injury. AG-EIP's breach of contract argument is based solely on breach of the Service Agreement.[68]

A claim for breach of contract exists where it can be shown that the parties: (1) had a contract; (2) there was a breach of a duty imposed by the contract; and (3) damages resulted from

---

[66] Service Contract § 21, ALCS's Ex. B [Doc. No. 150].

[67] AG-EIP's Third Party Compl. ¶ 24, AG-EIP's Ex. A [Doc No. 148-1].

[68] AG-EIP's Third Party Compl. ¶¶ 23-27, AG-EIP's Ex. A [Doc. No. 148-1].

the breach.[69] AG-EIP ignores the fact that the Service Contract was not effective until January 5, 2021, months after Plaintiff Roubert's alleged injury, failing to satisfy the first element for a breach of contract claim under Pennsylvania law.[70]

As mentioned above, the Service Contract is unenforceable because it was entered into under unequal bargaining power. While there is a retroactivity clause applied to the insurance clause as well as the indemnification clause, the retroactivity clause is unconscionable. Without the retroactivity clause, the insurance clause states "Contractor agrees to maintain in full force and effect, and shall require each of its subcontractors performing any of the Work to obtain and keep in full force and effect, . . . the following policies of insurance."[71] The clause uses no past tense or retroactive language, only stating ALCS *agrees* to maintain insurance and *shall* direct subcontractors to do the same. The insurance clause is not retroactive, and no work commenced after executing the Service Agreement. Even viewed in the light most favorable to AG-EIP, there was no active contract requiring that ALCS maintain liability insurance during completion of its work. AG-EIP failed to present sufficient evidence to overcome summary judgment on the breach of contract claim, so the Court will grant ALCS summary judgment on this claim.

### 3.    Common Law Indemnification and Contribution

The right to contribution and indemnity are separate and distinct causes of action.[72] The right of contribution exists when "a joint tortfeasor . . . has discharged more than his *pro rata*

---

[69] *Tekman v. Berkowitz*, 639 F. App'x 801, 806 (3d. Cir. 2016) (quoting *Koken v. Steinberg*, 825 A.3d 723, 729 (Pa. Commw. Ct. 2003)).

[70] Service Contract § 1, ALCS's Ex. B [Doc. No. 150].

[71] Service Contract § 21.

[72] *See Sirianni v. Nugent Bros., Inc*., 506 A.2d 868, 870-71 (Pa. 1986) ("[I]n Pennsylvania, our legislature has specifically decided that the acceptance of contribution 'does not impair any right of indemnity under existing law.'" (quoting 42 Pa. Cons. Stat. Ann. § 8323)).

share of a common liability."[73] Indemnity "is a right which [ensures] to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."[74] Since contribution and indemnification are distinct causes of action, they will be analyzed separately.

Under Pennsylvania law, indemnification claims may be brought based on an express contract or the common law.[75] The parties' Service Contract included a contractual indemnification clause detailing the parties' rights and duties regarding liabilities, losses, and damages.[76] As discussed above, this clause was not in effect at the time of the fall, and no contractual indemnification clause governs the parties' conduct.

Common law indemnification is an "equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay [damages] because of a legal relationship to the party at fault."[77] Common law indemnification is appropriate when a defendant's liability arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay damages occasioned by another.[78] It is available to a party who, "without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."[79] A party must demonstrate he did not "ha[ve] any part in causing the

---

[73] *Straw v. Fair*, 187 A.3d 966, 1002 (Pa. Super. Ct. 2018).

[74] *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951).

[75] *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000).

[76] Service Contract § 14, ACLS's Ex. B [Doc. No. 150].

[77] *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. 2002).

[78] *Builder's Supply Co.*, 77 A.2d at 370.

[79] *Id.*

injury."[80] "Common law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant."[81] Moreover, the common law right to indemnity will be permitted "where necessary to prevent an unjust result."[82]

The Court must look to whether indemnity should be permitted to prevent an unjust result. Accordingly, the Court must determine whether, if without active fault on its own part, AG-EIP has been compelled by reason of some legal obligation to pay damages occasioned by the initial negligence of ALCS.

Here, the material facts and accompanying evidence, viewed in the light most favorable to AG-EIP, do not establish AG-EIP was actively at fault for Plaintiff Roubert's injuries. AG-EIP presents evidence that responsibility for removal of lag bolts rested with ALCS. Because there are different framings of facts presented, the question of common law indemnification is proper for a jury. Summary judgment will be denied.

### 4.    Common Law Contribution

Under Pennsylvania law, the right to contribution arises among joint tortfeasors to enforce "an equitable duty to share liability for the wrong done by both."[83] To be deemed joint tortfeasors, "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury."[84] In order to be entitled to contribution, a party must plead that it and another joint tortfeasor are both liable to a third party.

---

[80] *McLaughlin v. Nahata*, 260 A.3d 222, 230 (Pa. Super. 2021) (citation omitted).

[81] *City of Wilkes-Barre,* 804 A.2d at 92.

[82] *Id*.

[83] *Swartz v. Sunderland*, 169 A.2d 289, 290 (Pa. 1961).

[84] *Lasprogata v. Qualls*, 397 A.2d 803, 806 n.4 (Pa. Super. 1979) (quoting Black's Law Dictionary, 4th Ed. (1968) at 1661).

AG-EIP adduced sufficient evidence to survive summary judgment on its contribution claim. AG-EIP pled and produced evidence supporting the claim that ALCS was responsible for removing lag bolts under their agreement with AG-EIP. There remains a factual question as to whether AG-EIP is jointly responsible or retook control of the premises before the accident. The contribution claim may proceed to trial because there is a factual question whether and to what degree AG-EIP and ALCS are responsible for Plaintiff Roubert's accident.

### B.    AG-EIP's Motion for Summary Judgment

AG-EIP moves for summary judgment on Roubert, Amazon, Gilbane Building Company, and Budget Maintenance Concrete Services Inc.'s claims against it based upon three grounds: (1) whether AG-EIP can be held responsible under Pennsylvania law for Plaintiff's injuries that occurred after AG-EIP transferred possession and control for possession of the warehouse to Amazon; (2) whether AG-EIP can be held liable for the acts or omissions of an independent contractor; and (3) whether ALCS is obligated to indemnify AG-EIP under the terms of the Service Contract.[85]

---

[85] AG-EIP filed Supplemental Replies to Amazon, ALCS, and Plaintiff Roubert on September 27 and 28, 2023. Supp. Replies [Doc. Nos. 169-70, 172]. These supplemental replies were not filed in accordance with Judge Rufe's Required Procedures for Summary Judgment. The Court entered a scheduling order that clearly directed dispositive motions be filed in compliance with these Procedures. Order of Scheduling [Doc. No. 29]. The Court reiterated that the parties are directed to these Policies and Procedures in amended scheduling orders dated April 20 and June 29, 2022. Order of Revised Scheduling [Doc. No. 59]; Order of Amended Scheduling [Doc. No. 76]. The Court also struck AG-EIP's first motion for summary judgment for failing to comply with these Policies and Procedures and reiterated on July 20, 2023, that parties are directed to conform to the Policies and Procedures. [Doc. No. 143].

Despite these repeated directions, AG-EIP filed supplemental replies without leave of this Court and not in compliance with Judge Rufe's Policies and Procedures for Summary Judgment. Accordingly, AG-EIP's Supplemental Reply to ALCS, Supplemental Reply to Amazon, and Supplemental Reply to Plaintiff Roubert will not be considered. [Doc. Nos. 169-70, 172]. Amazon properly filed a Sur-Reply on September 18, 2023, in accordance with Judge Rufe's Policies and Procedures. [Doc. No. 168]. The Sur-Reply will be considered. Non-permitted supplemental replies, if considered, would not have impacted the Court's reasoning and decision.

### 1.    Landlord Out of Possession

To receive summary judgment, it is the movant's burden to demonstrate that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law.[86] AG-EIP fails to meet this burden. Under Pennsylvania law, "a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons."[87] "[L]iability is premised primarily on possession and control, and not merely ownership."[88] There are exceptions to the landlord out of possession rule, including when: (1) the landlord reserved control over a defective portion of the premises; (2) the premises is so dangerously constructed that it is a nuisance per se; (3) the landlord has knowledge of a dangerous condition at the time of transferring possession and failed to disclose this condition; (4) the landlord leases the property for the purpose of involving admission to the public and he fails to inspect for and repair dangerous conditions existing prior to transfer; (5) the landlord undertakes to repair the premises and negligently makes the repairs; and (6) the landlord fails to make the repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased property.[89]

There is a genuine issue of material fact as to whether AG-EIP was a landlord out of possession at the time of Plaintiff Roubert's injury. Defendant Amazon presented evidence that AG-EIP retained presence at the location; that AG-EIP and its subcontractors were still working at the property after October 1, 2020; that there was a variable lease start date; and that there is a genuine issue of material fact as to whether AG-EIP transferred possession and control to

---

[86] Fed. R. Civ. P. 56(a).

[87] *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007).

[88] *Deeter v. Dull Corp.*, 617 A.2d 336, 339 (Pa. Super. 1992).

[89] *Dorsey v. Continental Assocs.*, 591 A.2d 716, 718-19 (Pa. Super. 1991).

Amazon and transferred the property in "broom-clean condition, free and clear of all prior occupants, claims and furniture, fixtures and equipment."[90]

Even if AG-EIP established it was a landlord out of possession, there is a genuine issue of material fact whether an exception to the landlord out of possession rule applies. Once a moving party meets its initial burden, the non-moving party may counter with "specific facts showing there is a genuine issue for trial."[91] The non-moving party must show more than the "mere existence of a scintilla of evidence" for elements of which the non-movant bears the burden of production.[92] At minimum, Plaintiff Roubert and Amazon provided evidence showing that AG-EIP undertook responsibility for removal of the racking systems, including lag bolts.[93] The improper removal of the bolts led to Plaintiff Roubert's alleged injuries. That AG-EIP hired ALCS to conduct the repairs does not absolve AG-EIP of the responsibility it voluntarily took on to repair the premises, particularly as applied to the issue of whether AG-EIP was a landlord out of possession. Because the non-moving parties countered with specific facts that AG-EIP undertook repairs (i.e., removing the lag bolts) and those repairs were negligently made, AG-EIP did not adduce sufficient evidence to warrant the entry of summary judgment on the basis of being a landlord out of possession.

---

[90] MacMillan Dep. at 60, Amazon Resp. Opp. AG-EIP Mot. Summ. J. Ex. A [Doc. No. 159-1]; Murray Dep. at 27, Amazon Resp. Opp. AG-EIP Mot. Summ. J. Ex. D [Doc. No. 159-4]; Lease Agreement [Doc. No. 162-2] (stating that the Commencement date of the lease is "the earlier of (i) the date [Amazon] occupies any portion of the premises for the purpose of conducting business or (ii) the later of October 1, 2020 . . . and (2) the actual date of Substantial Completion of the Work . . . or the date Substantial Completion would have occurred but for a Tenant Delay"); Amazon Resp. Opp. AG-EIP Mot. Summ. J. at 9 [Doc, No. 159].

[91] *Matasushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986) (citation and emphasis omitted).

[92] *Anderson*, 477 U.S. at 252.

[93] Lease Agreement Work Letter ¶ 3 [Doc. No. 162-2]; McMillan Dep. at 43-45, 132, Roubert Resp. Opp. AG-EIP Mot. Summ. J., Ex. A [Doc. No. 158-1].

### 2.    Independent Contractor

There is a genuine issue of material fact as to whether the retained control exception applies to the independent contractor question. AG-EIP claims that ALCS was an independent contractor, and under Pennsylvania law, a landowner who employs an "independent contractor is not responsible for the acts or omissions of such independent contractor or his employees."[94] However, there is an exception to the general rule against property owner liability when the property owner retains control of the area.

> As set forth in the Restatement [(Second) of Torts, Section 414], the "retained control" exception provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."[95]

Comment c to § 414 in the Restatement (Second) of Torts sets forth the test for determining whether a landowner retained control such that the landowner will be held liable. "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."[96]

Plaintiff Roubert and ALCS present evidence that AG-EIP representative Gary McMillan performed twice weekly inspections of the area from late August 2020 until the middle of October 2020.[97] Mr. Murray, of ALCS, testified to his relationship with McMillan: "He was my

---

[94] *Beil v. Telesis Const., Inc.*, 11 A.3d 456, 466 (Pa. 2011).

[95] *Id*. (quoting Restatement (Second) of Torts § 414).

[96] Restatement (Second) of Torts § 414, cmt. c.

[97] McMillan Dep. at 51-52, 60, Roubert Resp. Opp. AG-EIP Mot. Summ. J., Ex. A [Doc. No. 158-1]; Murray Dep. at 24, AG-EIP Resp. Opp. ALCS Mot. Summ. J. Ex. A [Doc. 156-1].

man. He was my platoon sergeant."[98] He also described McMillan as his "instructor since 2008."[99] Describing McMillan as a sergeant and instructor provides some evidence that Mr. McMillan's role in ALCS's work extended beyond periodic inspections, which alone would not be sufficient to establish retained control.[100] Further, Mr. Murray testified that, during the project, McMillan told him the timeline had sped up and directed him to complete the work faster than was initially agreed upon.[101] Murray also testified that McMillan gave final approval that work in Phase I was complete.[102] This evidence, viewed in the light most favorable to the non-movants, presents a genuine issue of material fact as to whether AG-EIP retained control of ALCS's work.

Summary judgment will be denied on this issue.

### 3.    Indemnification

As discussed above, ALCS cannot be required to indemnify AG-EIP under the Service Contract on this record. AG-EIP presented no facts or law to support a common law indemnification claim unrelated to the Service Contract indemnification clause. Therefore, AG-EIP cannot establish sufficient evidence to show that no reasonable factfinder would find for the non-moving party. Summary judgment will be denied on this issue.

---

[98] Murray Dep. at 76, Amazon Resp. Opp. AG-EIP Mot. Summ. J. Ex. D [Doc. No. 159-4].

[99] Murray Dep. at 71, ALCS Resp. Opp. AG-EIP Mot. Summ. J. Ex. E [Doc. No. 157-1].

[100] *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264 (Pa. 2006) (citing *Hader v. Cement Mfg.* Co., 189 A.2d 271, 278 (Pa. 1978)).

[101] Murray Dep. at 39, 76, AG-EIP Resp. Opp. ALCS Mot. Summ. J. Ex. A; Amazon Resp. Opp. AG-EIP Mot. Summ. J. Ex. D [Doc. Nos. 156-1, 159-4].

[102] Murray Dep. at 93, Budget Reply to Gilbane Mot. Summ. J. Ex. B [Doc. No. 167-2].

**IV.    CONCLUSION**

For the aforementioned reasons, AG-EIP's Motion to Reform the Service Contract is denied and ALCS's Motion for Partial Summary Judgment will be granted in part and denied in part. An order will be entered.